IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM S. BOYD,

            Plaintiff,

    v.

ERIN REYES, WARREN ROBERTS, CHARLES COX, LYLE SMITH, C. DIETER, NAPHCARE, P. MANEY, GUEVARA, and BETHANY SMITH,

            Defendants.

Case No.: 2:23-cv-01284-AN

OPINION AND ORDER

Plaintiff William S. Boyd brings this action against defendants Erin Reyes, Warren Roberts ("Dr. Roberts"), C. Dieter ("Dieter"), P. Maney ("Maney"), Guevara, and Bethany Smith (collectively, the "State defendants") and NaphCare, Charles Cox ("Cox"), and Lyle Smith ("Smith") (collectively, the "NaphCare defendants"), seeking injunctive relief and damages for alleged violations of his civil rights under 42 U.S.C. § 1983. Plaintiff alleges that defendants, employees of the Oregon Department of Corrections ("ODOC") and its dialysis provider, NaphCare, are deliberately indifferent to his medical needs by withholding medically necessary treatments, including failing to provide appropriate dialysis treatments, restricting the use of "crit-lines," and failing to provide a prescribed diet for plaintiff's end-stage kidney failure. As a result of this deliberately indifferent medical treatment, plaintiff alleges, he has been kept in a state of fluid overload, worsening his condition and putting him at risk of additional health concerns.

NaphCare defendants filed a motion to dismiss. Plaintiff filed two motions for leave to amend the operative complaint. For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part, and the motions to amend are GRANTED in part and DENIED in part.

# LEGAL STANDARDS

## A.    Motion to Dismiss

To survive a Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed R. Civ. P. 12(b)(6).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).  The court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citing *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008)).  Bare assertions that amount to mere "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (internal citations and quotation marks omitted).

In ruling on an FRCP 12(b)(6) motion to dismiss, a court may consider only "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  A court may also consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (citations omitted).

The court must construe pleadings by *pro se* plaintiffs liberally and must give them the benefit of any doubt.  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).  Before dismissing a complaint, a court must give a statement of the complaint's deficiencies and must give leave to amend the complaint unless it is "'absolutely clear'" that the deficiencies could not be cured by amendment.  *Id.* (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

## B.    Motion to Amend

A party may amend its pleading once as a matter of course within certain time parameters. Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend its complaint "only with the opposing party's

written consent or the court's leave. Fed. R. Civ. P. 15(a)(1)(2). The court "should freely give leave when justice so requires." *Id.* Courts consider four factors: " bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). "[F]utility of amendment alone can justify the denial of a motion [to amend]." *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

The court must issue a scheduling order in each case that includes a deadline to amend the pleadings. Fed. R. Civ. P. 16(b). The schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(3). As a result, when a motion to amend is filed after the deadline to file the pleadings, the court must consider the requirements of both FRCP 15 and 16(b). "Good cause" is primarily determined by "the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

## BACKGROUND

### A.    Factual Background

Plaintiff is an adult in custody at Two Rivers Correctional Institution ("TRCI") and a dialysis patient who was diagnosed with end stage renal failure prior to his incarceration. Am. Compl., ECF [39], at 6. Plaintiff alleges that he has suffered significant water retention, resulting in pain and possible long-term injuries, because of two categories of allegedly deficient medical treatment: his medically prescribed diet and his regular dialysis treatment. *Id.*

Plaintiff alleges that after beginning dialysis in August 2021 at TRCI, he began experiencing "heavy water gain" between his dialysis treatments. *Id.* He first attributes the water gain to the food he was provided at TRCI. Plaintiff requested to see a dietitian because the food he was provided was "unsafe and unhealthy," but Smith, a nurse manager employed by NaphCare, told plaintiff that the food he was receiving was "required" and that he would not be permitted to meet with a dietitian. *Id.*

Plaintiff's doctor and ODOC nephrologist, Seth Thaler ("Dr. Thaler"), and Cox, another dialysis nurse manager employed by NaphCare, met with Guevara, an ODOC dietitian, on an unspecified

date. *Id.* at 6-7.  Plaintiff alleges that at this meeting, it was established that the protein and calories he was receiving were not the "community standard of care" required for dialysis patients. *Id.*  He alleges that TRCI at one point issued "double protein" meal cards for dialysis patients but had discontinued the program. *Id.*

Plaintiff wrote a second letter on October 8, 2021, requesting a "kidney/renal diet" because he was concerned that he was gaining weight rapidly and having trouble adequately removing retained fluid at his dialysis treatments. *Id.* at 7.  Smith responded that ODOC, not NaphCare, had authority over the issue. *Id.*  Plaintiff then reached out to Dr. Thaler to say that the "dialysis trays" he was being served at TRCI contained potatoes, beans, peanut butter, and milk, which he had been instructed not to eat. *Id.* at 7-8.  However, with no other alternatives, plaintiff was hungry and was forced to eat those trays. *Id.* at 8.  Plaintiff states that Dr. Thaler provided him prescriptions for a "double-protein diet" on April 21, 2022, May 7, 2022, and May 26, 2022, but plaintiff never received them. *Id.*

On May 23, 2022, plaintiff filed a grievance related to his diet. *Id.*  Cox responded that Maney, a nurse practitioner, had discontinued the diet order because he did not believe it was clinically necessary. *Id.*  Plaintiff states that in the time between first complaining on September 22, 2021, and filing his grievance on May 27, 2022, he gained thirty-five pounds of excess water weight, which caused him severe pain and discomfort. *Id.*  Plaintiff appealed his grievance response and was informed by Dr. Roberts, ODOC's medical director, that he would be approved for a double protein diet until September 8, 2022, but plaintiff did not receive the meals. *Id.* at 9.

Throughout his time at TRCI, plaintiff has received regular dialysis treatments multiple times per week.  Plaintiff believes that there are standard treatment protocols for dialysis, including a water removal limit averaging "13 ml/kg/hr." *Id.* at 10-23.  He states that if this limit is exceeded, patients can suffer injuries, including organ damage. *Id.* at 17-23.

Plaintiff alleges that his dialysis machine was incorrectly programmed for fluid pull at each of his dialysis treatment sessions, which caused him illness, dehydration, and low blood pressure. *Id.* at 10-17. Although he initially had three treatments per week, on an unspecified date Dr. Thaler ordered

4

plaintiff to increase dialysis to four times per week because of his fluid overload. *Id.* at 9. Plaintiff's "dry weight" at his first dialysis treatment on August 27, 2021, was 77 kilograms and his pre-weight was 85.4 kilograms. *Id.* at 10. At his October 9, 2021, treatment, Smith adjusted plaintiff's dry weight to 79 kilograms, despite plaintiff having excess fluid in his body and having a diagnosis from Dr. Thaler saying as much. *Id.* at 13. On November 16, 2021, plaintiff's dry weight was adjusted to 82 kilograms, and his pre-weight to 90.2 kilograms. *Id.* at 14. He continued to be fluid overloaded/hypervolemic and was prescribed oxygen to use during his treatments. *Id.* On December 4, 2021, plaintiff's dry weight was increased to 86.5 kilograms. *Id.* at 15. On December 11, 2021, his dry weight was lowered to 77 kilograms. *Id.* On January 11, 2022, plaintiff's dry weight was increased to 90 kilograms, despite him being "in obvious discomfort and pain from his current fluid status" and requiring oxygen. *Id.* at 16. On April 12, 2022, his dry weight was increased to 90 kilograms and on June 29, 2022, to 93 kilograms. *Id.* at 17. Overall, plaintiff alleges that his dialysis treatments were incorrectly programmed and pulled beyond the limit from August 2021 to March 2024. *Id.* at 18. As a result, he retained excess water after each treatment, which accumulated. *Id.* at 28.

Plaintiff first filed a grievance related to his dialysis on September 23, 2021, explaining that too much fluid was being pulled, leaving him "sick and weak" after treatments. *Id.* at 12. Dieter, a nurse manager, responded, explaining that a fourth treatment per week had been scheduled, but ignored plaintiff's complaint about excessive fluid pull. *Id.* Plaintiff appealed that response, explaining that the excessive fluid pulls were causing him "severe dehydration," low blood pressure, pain, and headaches, and that he was concerned that he was experiencing a hurt injury. *Id.* He received a response from Roberts on December 29, 2022, explaining the process for determining the fluid removal rate. *Id.* at 16.

Plaintiff complained about experiencing excessive fluid pulls and around December 2021 asked Smith to use a "crit-line" during his dialysis treatment, which would "alarm if too much fluid was pulled off too fast." *Id.* at 23. Plaintiff alleges that crit-lines are a standard component of dialysis machines that are used for unstable or hypervolemic patients like him. *Id.* at 24. Smith approved the use of a crit-line, implemented it, and for two months plaintiff experienced fewer negative side effects from his

treatment. *Id.* at 23. Two months later, on February 1, 2022, Cox discontinued the use of the crit-line, informing plaintiff that "they take up too much staff time to monitor and that the device itself is too expensive." *Id.* Plaintiff appealed that decision, but Roberts told him that crit-lines are not part of dialysis. *Id.* at 24.

Plaintiff alleges that defendants were deliberately indifferent to his medical needs. *Id.* at 33-34. Regarding the NaphCare defendants, plaintiff alleges more specifically that all NaphCare defendants were deliberately indifferent to his dialysis treatment needs, that Cox was deliberately indifferent in failing to use a crit-line, and that NaphCare has a policy of restricting the use of crit-lines that caused him suffering. *Id.* at 35. He seeks declaratory relief and injunctive relief, commanding defendants to provide an adequate medical diet and safe dialysis treatments. He also seeks compensatory damages.

**B.    Procedural Background**

Plaintiff filed his initial complaint on September 5, 2023. ECF [1]. State defendants filed an answer on January 29, 2024. ECF [15].

On April 15, 2024, NaphCare defendants filed a first motion to dismiss. ECF [31]. In response, plaintiff filed an amended complaint. The Court accepted the amended complaint pursuant to FRCP 15(a)(1)(B) and denied the first motion to dismiss as moot. Order of May 15, 2024, ECF [41]. State defendants again filed an answer. ECF [60]. On May 30, 2024, NaphCare defendants filed a second motion to dismiss. Mot. to Dismiss ("MTD"), ECF [47]. In response to the pending motion to dismiss, plaintiff filed two motions for leave to amend the complaint. The First Motion for Leave to Amend, ECF [104], was filed on November 26, 2024. The Second Motion for Leave to Amend, ECF [117], was filed on January 2, 2025, before any ruling on the prior motion.

For the majority of these proceedings, plaintiff has represented himself. On January 31, 2025, however, the Court granted plaintiff's motion for appointment of counsel for limited purpose. Order of Jan 31, 2025, ECF [154]. On March 17, 2025, attorney Juan Chavez accepted representation. ECF [179].

# DISCUSSION

## A.    Motion to Dismiss

NaphCare defendants move to dismiss the entire amended complaint or, in the alternative, to dismiss the claims against themselves.

### 1.    Technical Deficiencies

First, defendants argue that the complaint is technically deficient.  Plaintiff filed numerous exhibits on the docket before filing his first amended complaint.  *See* Exs. 89-159, ECF [25]; Exs. 60-89, ECF [26]; Exs. 31-59, ECF [27]; Ex. 93, ECF [28]; Exs. 160-166, ECF [30].  Defendants argue that the amended complaint improperly cites these exhibits, which renders the complaint defective.  Mot. to Dismiss 6.

An amended complaint supersedes any earlier-filed complaint, meaning that once an amended complaint is filed, it is the operative complaint, and the Court cannot rely on allegations in any preceding complaint.  *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999), *and overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). The "operative complaint must contain all claims, attachments, and requests for relief that Plaintiffs wish the Court to consider." *Varner v. Strawter*, No. 224CV00537JADDJA, 2024 WL 1606997, at *1 (D. Nev. Apr. 12, 2024).

Many of the exhibits were not filed contemporaneously with the original complaint but were filed prior to the amended complaint.  They are therefore not considered part of the operative complaint.  It is also difficult to parse the complaint and understand which exhibits are being referred to because some exhibits are directly attached to the complaint, while others cited in the complaint are filed separately.  In addition, some exhibits were filed after the amended complaint, *see* Exs. 143-159, ECF [41], but share numbers with previously filed exhibits, *see* Exs. 89-159, ECF [25].  These issues, however, can be corrected by amendment.  Accordingly, plaintiff shall be permitted to file a second amended complaint that does not refer to any superseded or prior-filed documents.

2.    *Statute of Limitations*

Next, defendants argue that plaintiff's state negligence claims and federal deliberate indifference claims brought under 42 U.S.C. § 1983 are time-barred in part. MTD 6-7. Oregon's statute of limitations for personal injuries, including for injuries arising from medical treatment or omission of treatment, is two years. Or. Rev. Stat. § 12.110. "When, as here, a federal civil rights statute does not include its own statute of limitations, federal courts borrow the forum state's limitations period for personal injury torts." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Thus, "Oregon's two-year statute of limitations for personal injury actions applies to actions under 42 U.S.C. § 1983." *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989). Because plaintiff filed the first complaint on September 5, 2023, defendants argue that claims regarding conduct that occurred prior to September 5, 2021, should be dismissed. *Id.*

Given the applicable statutes of limitations, plaintiff's claims regarding conduct prior to September 5, 2021, are dismissed. However, plaintiff may include allegations of conduct that occurred prior to that date to the extent that those allegations provide context for his timely claims.

3.    Monell *Liability*

NaphCare defendants argue that plaintiff has not sufficiently alleged facts necessary to bring a claim under 42 U.S.C. § 1983 against Naphcare or against Cox or Smith in their official capacities. Section 1983 creates a private cause of action for persons injured by "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of law. 42 U.S.C. § 1983. To state a claim, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Municipalities and other local government units are subject to Section 1983 liability. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). *Monell* liability applies to a private entity "when it stands in the shoes of a municipality while providing public services under a contract." *Tapia v. NaphCare Inc.*, No. C22-1141-KKE, 2025 WL 90973, at *4 (W.D. Wash. Jan. 14, 2025) (citing

8

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139-40 (9th Cir. 2012)) (applying *Monell* liability to NaphCare). There are three cognizable theories of municipal liability: (1) an official policy, practice, or custom caused the injury; (2) an omission or failure to act caused the injury "when such omissions amount to the local government's own official policy"; and (3) an official "with final policy-making authority" committed the tort or "ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (citation modified), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

NaphCare defendants argue that any claims against Cox and Smith in their official capacity should be construed as claims against NaphCare itself and that the claims against Cox and Smith should be dismissed. MTD 10. In a case brought under section 1983, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Accordingly, the claims against Cox and Smith in their official, but not individual, capacities are dismissed.

NaphCare defendants do not dispute that NaphCare could be subject to *Monell* liability as a private entity that stands in the shoes of a municipality while providing services under a contract. They argue, however, that plaintiff fails to state a *Monell* claim against NaphCare. MTD 10. Plaintiff alleges that "[d]efendant NAPHCARE have [*sic*] a policy of restricting the use of 'crit-lines' due to staff having to monitor those 'crit-lines' during [p]laintiff's dialysis treatment and the cost of the 'crit-line.'" Am. Compl. 35. However, plaintiff does not allege any facts explaining the existence of a specific policy or evidence of repeat enactment of the policy. This allegation amounts to a bare conclusory statement and is not sufficient to state a *Monell* claim. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Accordingly, this claim is dismissed with leave to amend if plaintiff believes that he can adequately allege the existence of an official policy or other *Monell* basis for liability.

    4.   *Deliberate Indifference*

NaphCare defendants argue that plaintiff fails to state a claim against Smith or Cox in their

individual or official capacities for deliberate indifference to his medical needs.  MTD 7-10.

The government has an "obligation to provide medical care for those whom it is punishing by incarceration" and "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' [] proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 17 (1976)).  Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted).

Courts in the Ninth Circuit use a two-part test for deliberate indifference: "'First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.'" *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  As to the first prong, "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  As to the second prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  "[D]eliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Jett*, 439 F.3d at 1096).  A prisoner is not required to show that the harm was substantial. *Id.* (quoting *Jett*, 439 F.3d at 1096).  "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment

violation." *Toliver v. Cain*, No. 2:21-cv-01232-JR, 2022 WL 561983, at *2 (D. Or. Feb. 24, 2022) (collecting cases).

As to Smith, NaphCare defendants argue that the allegations are limited and do not state that Smith was authorized to or did make any decisions regarding plaintiff's care or treatment. MTD 9. While plaintiff alleges that Smith "conducted dialysis at improper rates," NaphCare defendants contend that "[p]rescribed treatments [] are the province of a licensed independent practitioner, not a nurse" and plaintiff does not and cannot allege that Smith "could make determinations about dialysis treatment ordered by a nephrologist." *Id.* As to Cox, NaphCare defendants argue that the allegations in the complaint are limited to statements that Cox "convey[ed] messages for provider orders" and another message "relating how the use of 'crit lines' was determined" and that there are no allegations that Cox, a nurse, made any intentional decisions about plaintiff's treatment. *Id.*

Plaintiff's allegations against Smith are, in sum: Smith did not permit plaintiff to meet with a dietitian; explained to plaintiff that ODOC had authority over his diet; regularly increased plaintiff's dry weight during dialysis treatments despite evidence that plaintiff was experiencing fluid overload; and approved the use of a crit-line. Plaintiff's allegations against Cox are, in sum: Cox participated in a meeting with Dr. Thaler and Guevara at which it was established that plaintiff required a specific diet; informed plaintiff that Maney, an ODOC employee, had discontinued his diet; and made the decision to discontinue use of the crit-line because they are expensive and require more work.

Plaintiff satisfies the first prong of pleading that he has a serious medical need and that failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain. He has not, however, adequately alleged the second prong. Construing the pleadings liberally in favor of plaintiff, he does not allege that Smith and Cox denied dialysis treatment or intentionally delayed his treatment. Rather, plaintiff alleges that Smith and Cox administered the treatment in a way he found negligent and deficient. Accordingly, these claims are dismissed, with leave to amend.

5.    *Medical Malpractice*

Plaintiff brings state law negligence claims against NaphCare defendants. In Oregon,

medical malpractice claims are professional negligence claims. *Rogers v. Meridian Park Hosp.*, 307 Or. 612, 619, 772 P.2d 929 (1989) ("Medical malpractice cases are nothing more that negligence actions against medical professionals."). To prove a professional negligence claim, a plaintiff must show: "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, *i.e.*, a causal link between the breach of duty and the harm." *Zehr v. Haugen*, 318 Or. 647, 653-54, 871 P.2d 1006 (1994). To prevail on a medical malpractice claim, a plaintiff "must present evidence that there is a 'reasonable medical probability' that a defendant's negligence caused harm to plaintiff." *Sonsteng v. Dominican Sisters of Ontario, Inc.*, 630 F. Supp. 2d 1253, 1260 (D. Or. 2009) (citing *Joshi v. Providence Health Sys. of Or.*, 198 Or. App. 535, 544, 108 P.3d 1195 (2005)).

NaphCare defendants argue that plaintiff fails to plead that Smith or Cox violated a standard of care or that any action by them harmed plaintiff, emphasizing that nurses do not prescribe the method of dialysis treatment. MTD 12. Plaintiff does allege that he was a patient of Smith and Cox and that there are certain standards of care for dialysis treatment. He also alleges that Cox and Smith knowingly improperly administered the dialysis, resulting in fluid overload and pain. Accordingly, plaintiff has adequately stated a claim for medical malpractice against Cox and Smith.

NaphCare defendants argue that as an entity, NaphCare cannot be directly responsible for medical care. MTD 12. However, hospitals and other entities may be held vicariously liable for an agent's medical malpractice. *Elsey v. Laury*, No. 1:12-cv-707-CL, 2013 WL 5651567, at *2 (D. Or. Oct. 16, 2013) (citing *Eads v. Borman*, 351 Or. 729, 277 P.3d 503 (2012)). More specifically, a hospital or other medical entity can be responsible for the negligence of its employees under a *respondeat superior* theory; "persons and hospitals that treat patients for hire with the expectation and hope of securing therefrom gain and profit are liable for negligence and malpractice on the part of physicians and nurses employed by them." *Eads v. Borman*, 234 Or. App. 324, 330, 227 P.3d 826 (2010), *aff'd*, 351 Or. 729, 277 P.3d 503 (2012) (quoting *Giusti v. C.H. Weston Co.*, 165 Or. 525, 530, 108 P.2d 1010 (1941)). Plaintiff alleges that NaphCare employs Cox and Smith as nurses and that Cox and Smith engaged in medical negligence while performing services that NaphCare was contractually obligated to provide. Accordingly, he has also adequately stated

a claim for medical malpractice against NaphCare.

**B.    Motions to Amend**

Plaintiff filed two motions for leave to amend.  Because the second motion to amend was filed before any decision on the first motion to amend, it supersedes the first motion to amend.  This distinction is immaterial, however, because the proposed amendments in the second motion to amend include those in the first motion to amend.

*1.    Proposed Amendments*

In the first motion for leave to amend, plaintiff states that he has obtained "two x-ray exams that support the allegations inside his complaint," that he wishes to attach to the complaint.  First Mot. to Amend, ECF [104], at 2.  Plaintiff explains that the X-rays, taken on October 29, 2024, and November 4, 2024, allegedly show an enlarged heart, pleural effusion, curvilinear opacity, and atelectasis, or partially collapsed lung, caused by the fluid overload and swelling, substantiating his claim of injury.  Pl. Reply Supp. First Mot. to Amend, ECF [112], at 1-2; *see* Proposed 2d Am. Compl. ("Proposed SAC"), ECF [117-1], at 36.

In the second motion to amend the complaint, plaintiff seeks leave to include the information from the X-rays described above.  He also seeks to add Dr. Thaler as a new defendant.  Proposed SAC 5.  Plaintiff alleges that Dr. Thaler comes to TRCI once a month to assess him and that "although Charles Cox and Lyle Smith were responsible for Plaintiff's day to day dialysis sessions and made arbitrary decisions in regards to Plaintiff's dialysis health care, Dr. Seth Thaler reviewed Plaintiff's care that was facilitated throughout the month by previous Nurse Manager Lyle [S]mith and presently Charles Cox."  *Id.* at 32-33.  He states that his dialysis charts, X-rays, and monthly doctor reports should have made Cox, Smith, and Dr. Thaler aware of his fluid overload and pleural effusion, but they ignored his results.  *Id.* at 33.  He argues that Dr. Thaler should have ordered routine X-rays to monitor the pleural effusion, and if he had, plaintiff would not have sustained more serious injuries.  *Id.* at 33.  Plaintiff alleges that any competent person would not have raised his "dry weight" when he was suffering from fluid overload and pleural effusion, but Smith and Cox did so, and Dr. Thaler failed to correct them.  *Id.*  Plaintiff

notes that his medical records show that he did not have an enlarged cardiac silhouette, curvilinear opacity, or atelectasis in his monthly reports up until after he was placed in fluid overload for some time. *Id.* at 34-35. Plaintiff also alleges that Maney should have questioned the changes to his dry weight in the monthly reports he received but did not do so. *Id.* at 35.

2.    *Leave to Amend*

Plaintiff filed the motions for leave to amend after the deadline set to amend the complaint or add new parties, so the proposed amendments must meet the requirements of FRCP 16 as well as 15. Here, plaintiff did not demonstrate diligence in seeking to add Dr. Thaler and allegations related to his supervision. Plaintiff has been aware of Dr. Thaler's role in his medical care since the inception of this litigation. Plaintiff was, however, diligent in seeking leave to amend to include allegations related to injuries recorded in his X-rays taken on October 29, 2024, and November 4, 2024. Plaintiff first moved to add this information on November 26, 2024, shortly after receiving the results. There is, therefore, good cause to permit the amendment under FRCP 16. The amendments, which clarify and expand upon plaintiff's alleged injuries, are not the result of bad faith or undue delay, will not prejudice defendants, and are not futile. Accordingly, plaintiff is granted leave, in his second amended complaint, to include allegations related to the injuries he alleges were recorded by the X-ray exams.

## CONCLUSION

For the foregoing reasons, NaphCare defendants' Motion to Dismiss, ECF [47], is GRANTED in part and DENIED in part. Plaintiff's First Motion for Leave to File Amended Complaint, ECF [104], is DENIED as moot. Plaintiff's Second Motion for Leave to File Amended Complaint, ETC [117], is GRANTED in part and DENIED in part. Plaintiff must file his second amended complaint no later than July 31, 2025, in accord with the rulings in this order.

The order appointing counsel for plaintiff states that counsel is appointed "for the limited purpose of assisting plaintiff through the discovery process and at oral argument for his motion for a temporary restraining order." Order of January 31, 2025, ECF [154]. In light of the present order, the Court clarifies that counsel's appointment extends to amendment to the complaint during the discovery period,

and that counsel may assist in filing an amended complaint.


IT IS SO ORDERED.


DATED this 3rd day of July, 2025.

Adrienne Nelson
United States District Judge